[Civ. No. 15275. Fourth Dist., Div. Two. Dec. 10, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MEL MACK COMPANY et al., Defendants and Appellants.

**COUNSEL**

Rimel & Helsing, David H. Eilfort and Richard Rockwell for Defendants and Appellants.

Cecil Hicks, District Attorney, Edgar A. Freeman and R. Richard Farnell, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—A partnership firm owns and operates several mobile home parks in Orange County. Whenever one of its tenants sells a mobile home through a mobile home broker, park management as a regular practice charges the broker a $300 fee before allowing the buyer to move into the park. The district attorney filed suit on behalf of the People for the purpose of enjoining the firm from collecting the fee, claiming it constituted consumer fraud (Civ. Code, §§ 789.7, 789.8) and unfair competition (Civ. Code, § 3369). In addition, the People requested restitution and the imposition of civil penalties.

The court issued a temporary restraining order at the time the action was initiated and set the matter for hearing in connection with the People's application for a preliminary injunction. Following the hearing, the court issued a preliminary injunction prohibiting the trailer park firm from collecting any entry or transfer fees unless it performed services in connection with the sale.

---

\*Before Tamura, Acting P. J., Kaufman, J., and McDaniel, J.

The park owner attacks the injunction on several grounds: (1) The statutes proscribing payment of entrance or transfer fees apply only to tenants (sellers) and prospective tenants (buyers), not brokers; (2) the court failed to make essential findings; (3) the statute is vague and uncertain on its face; and (4) a park operator is entitled to charge a fee when he performs valuable services in connection with a sale and a statute prohibiting the payment of such a fee is constitutionally void in that it deprives operators of a valuable property right without just compensation.

We have determined that the issuance of the preliminary injunction was proper; that it is illegal for mobile home park management to impose an entrance or transfer fee upon mobile home brokers under the circumstances presented herein; that the injunction does not prohibit the charging of a fee if a mobile home park operator performs extraordinary services in connection with the sale of a mobile home; that the statute involved is not vague, indefinite or otherwise constitutionally defective; and that the court's findings are supported by substantial evidence.

## FACTS

The Mel Mack Company, a general partnership composed of four individuals ("Defendants") owns and operates nine (9) mobile home parks in Orange County. Mobile home owners become tenants in Mel Mack's parks in one of three ways: (1) They already own a mobile home and apply for a vacant space; (2) a Mel Mack tenant sells his mobile home situated in the park directly to a buyer and the latter moves into the seller's space; and (3) a Mel Mack tenant desiring to sell his mobile home lists it with a mobile home broker; the broker finds a buyer; and the purchaser moves into the park, *providing* a $300 entrance or transfer fee is paid.

It is worthy of emphasis that in the first two situations, a fee is *not* involved; it is only in situation 3 that the $300 fee is charged and the fee is imposed upon the *broker*, not the seller or buyer.

In a typical case where a Mel Mack tenant wishes to sell through a broker, he advises the broker of the amount he wants to net on the sale ($10,000); the broker finds a buyer willing to pay a higher price ($11,000); the broker then pays Mel Mack the $300 fee from his gross profit ($1,000).

Two of Mel Mack's former managers filed declarations indicating that while they were in defendants' employ they never provided services in connection with sales by brokers; never showed a mobile home to a prospective buyer for a broker; never examined a home involved in a sale for maintenance problems; never informed a purchaser of maintenance or repairs needed before he could move in; never prorated rents or utilities (the tenants performed that function); never kept keys in the park for brokers' use; never measured a vacant space; never orally interviewed a new tenant except to set down certain rules; and never were told by Mel Mack that the $300 fee was being charged for services; to the contrary, the managers were told the fee was a transfer fee.

One of the partners (Bradley), in his capacity as superintendent of the parks, had posted the following sign in one of the parks: "Any Agent or Mobile Home Broker Selling a Mobile Home in this Park Shall Pay a $300 Entrance Fee." When brokers inquired why they were being charged a fee, the superintendent said the fee was exacted because Mel Mack was providing the spaces.

If the broker refused to pay the $300 fee, the seller could either stay in the park or move out. If the seller is required to sell his home and remove it from the park, he will suffer an estimated loss of at least 50 percent of the fair market value of the home in place.

On the other hand, defendants filed opposing declarations to the effect that Mel Mack park operators provide the following direct and indirect services to brokers: (1) Show the park facilities to the prospective tenants; (2) inform prospective tenants of any possible repairs or maintenance they may have to perform on a particular home or space; (3) prorate utilities and rent between the out-going and in-coming tenants; (4) conduct character and credit investigations of prospective tenants; and (5) confer with brokers who are attempting to obtain listings from tenants and furnish them with pertinent information, such as the size of the space.

After considering the foregoing declarations and affidavits, the court issued an injunction pendente lite enjoining the defendants from collecting from any tenant or broker any entry, transfer or selling fee ". . . if defendants perform no service in the sale of the mobile home. . . ." The court expressly found that defendants' practice violated sections 789.7 and 789.8 of the Civil Code.[1]

---

[1]All references herein are to that code.

## MOBILEHOME PARKS LEGISLATION

Section 789.7, enacted in 1971, provides as follows: "The owner of a mobilehome park or his agents shall not charge any fees to tenants other than charges for rent, utilities, or incidental reasonable service charges."

Section 789.8, enacted in 1972, provides as follows: "There shall be no entry charge as a condition of tenancy in a mobilehome park, nor shall there be any transfer or selling fee as a condition of sale of a mobilehome within a mobilehome park, even if such mobilehome is to remain within the park, if the park management performs no service in the sale of the mobilehome."

As a matter of legislative history, the parties agree that prior to the enactment of the foregoing sections, it was the practice of some mobile home park owners to require prospective tenants desiring to move into a park to pay a fee to the park owner (an entrance fee); it was also customary in some parks to charge a fee when tenants sold their mobile homes and left them in the park (a transfer fee); the transfer fee had to be paid by the seller or the buyer. If the tenant or prospective tenant did not pay the fee, some park owners threatened them with eviction.

Against this background, Mel Mack argues that the statutes were designed to protect only *tenants and prospective tenants,* and were not intended to proscribe the imposition of similar fees on *brokers.* Patently, section 789.7 expressly precludes Mel Mack from charging the tenant a transfer fee. Consequently, section 789.8 is the only section requiring analysis.

Two cardinal rules govern the interpretation of a statute. The first is to ascertain the intent of the Legislature; to arrive at the legislative intent, recourse must first be had to the language of the statute itself; if the words of the enactment, given their ordinary and proper signification, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain the meaning of the statute. (*People* v. *Stanley,* 193 Cal. 428, 431 [225 P. 1].) However, if the Legislature's purpose cannot be ascertained from the statute itself, then resort should be had to the second rule which provides that the statute is to be read in the light of its historical background. (*H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28].)

Mel Mack claims that section 789.8 does not apply to brokers, but only to tenants, for the following reasons: (1) Dealers and brokers are not even mentioned; (2) as originally offered for enactment, the section provided that only dealers could charge a fee on the sale or resale of a mobile home; however, the language of the original bill was entirely deleted and the present language was substituted by amendment; consequently, mobile home dealers or brokers may be charged entry or transfer fees; and (3) there is pending in the Legislature a bill which would expressly prohibit park operators from charging mobile home dealers or brokers a fee for the privilege of allowing a mobile home sold to be moved into a park; consequently, existing law could not possibly cover brokers.

Although the word "broker" is not mentioned in section 789.8, the meaning of the statute is plain: "There shall be no entry charge as a condition of tenancy . . . nor . . . transfer or selling fee as a condition of sale . . . if the park management performs no service in the sale of the mobilehome." The $300 fee charged by park management is expressly prohibited if management performs no service in connection with the sale. Similarly, if Mel Mack refuses to approve a new tenant until the fee is paid, the $300 constitutes "a condition of tenancy." It is no less a condition of tenancy just because the broker ostensibly pays the fee instead of the tenant. Since the broker is able to recoup the fee by increasing the price charged the prospective tenant, the effect upon the latter is the same as if he paid the fee directly to the operator. Consequently, the statute is violated in both instances.

In further insisting that brokers are not covered because not mentioned, Mel Mack argues that when section 789.8 was first offered for legislative consideration, the following language was proposed: "No person other than a licensed mobile home dealer shall charge or receive a fee, charge or commission for the original sale or resale of a mobile home." However, prior to passage, the foregoing language was deleted in its entirety and the present language was substituted in lieu thereof by amendment. *Ergo,* defendants again maintain that only tenants and would-be tenants are protected from payment of an entry or transfer fee.

But section 789.8 was enacted in 1972. Under section 789.7 (enacted a year earlier) the park operator was expressly prohibited from charging any fees to tenants other than charges for rent, utilities or incidental services. When read together, the two sections clearly reflect an intent on the part of the Legislature to strictly limit the ability of park manage-

ment to collect fees from *any* source except, of course, for services performed. As enacted, section 789.8 prohibits all charges not specifically excepted. The bill as originally presented gave a broker specific protection; it would be ironic indeed to construe the statute now so as to deny him protection.

In its final argument as to the scope of section 789.8, Mel Mack states that there is legislation now pending in Sacramento prohibiting park management from exacting or demanding any fee or commission from a mobile home dealer or broker (Assem. Bill No. 1011 which would add §§ 789.12 and 789.13 to the code) so existing law could not possibly cover brokers. However, the argument assumes too much and amounts to pure speculation as to legislative intent or a particular legislator's motive.[2]

Summarizing, section 789.7 prohibits charges to tenants by management; section 789.8 prohibits all entry and transfer charges by management as a condition of tenancy; the latter section is thus broader and more inclusive in that it prohibits any charge to any person, including brokers and dealers; otherwise there would not have been any purpose in enacting section 789.8 a year later inasmuch as tenants were already protected.

### SERVICES RENDERED

Mel Mack next argues that even if section 789.8 applies to brokers, there was no violation in that its personnel actually rendered services to brokers for which it was entitled to receive the $300 fee and that the trial court failed to find that it performed no service within the meaning of the statute.

At the termination of the hearing, Mel Mack's counsel asked the court whether its proposed ruling in issuing the preliminary injunction was based on a violation of section 789.8. The court replied that in its opinion the payment of the $300 fee as a condition of tenancy constituted such a violation. Mel Mack's counsel inquired whether the court had determined that Mel Mack provided no services and the court replied that the services performed by Mel Mack where a broker was involved were the same as those it would have provided if no broker were involved and, therefore, the $300 charge was a violation of the act inasmuch as it constituted a condition of moving into the park. The court was right.

---

[2]We have been informed that Assembly Bill No. 1011 was initially defeated and is being offered for reconsideration. If we were inclined to engage in speculation, we could conclude that the reason for its defeat was that section 789.8 already covers brokers.

Although Mel Mack filed affidavits indicating management rendered services to brokers (see Facts, *ante*), the court also had before it sworn declarations that Mel Mack received payment of fees without performing any services whatsoever. In the second place, the court impliedly found that Mel Mack performed, at most, ordinary, routine services which were rendered to all tenants, regardless of whether a broker was involved and the $300 fee charged. Finally, the court also ordered, as a condition of the injunction, that Mel Mack could charge for services rendered. Manifestly, such services would not include work which, of necessity, was performed for all tenants or prospective tenants. To hold as Mel Mack suggests that any services would support a $300 charge would be giving an absurd effect to section 789.8. The term "services" as employed in the statute simply means those services which are not ordinarily or usually rendered. There was no evidence of any special services performed by management in connection with any sale or resale of a mobile home.

## CONSTITUTIONAL ISSUE

Mel Mack advances two arguments in attacking the constitutionality of section 789.8: (1) It is vague and uncertain in that it is not clear whether fees charged to brokers constitute a violation of the section; and (2) it deprives park owners of a valuable property right without just compensation, to wit, the right to charge for services rendered in connection with the leasing of their own property.

While Mel Mack argues that a criminal statute must be definite and certain (*Keeler* v. *Superior Court,* 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974]), section 789.8 is obviously not a penal statute. All presumptions and intendments favor the validity of a civil statute; it must be upheld unless its unconstitutionality clearly, positively and unmistakably appears. (*Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701].)

The import of section 789.8 is clear: It simply states that mobile home park owners cannot receive a fee unless they perform a service.

Nor are mobile home park owners being deprived of a valuable property right without just compensation. There is no vested right to conduct a business free of reasonable governmental rules and regulations. The power of the Legislature to enact laws to prevent fraud and

sharp practices in real estate transactions particularly open to such abuses is beyond question. (*In re Sidebotham*, 12 Cal.2d 434, 436 [85 P.2d 453, 122 A.L.R. 496]; *People* v. *Mancha*, 39 Cal.App.3d 703, 720 [114 Cal.Rptr. 392].)

The preliminary injunction issued by the court only prohibits Mel Mack from violating the law. Where an injunction is authorized by statute, it is enough that the statutory conditions are satisfied. (*Porter* v. *Fiske*, 74 Cal.App.2d 332, 338 [171 P.2d 971].) Defendants have no right to continue to violate the law. If they can establish at trial that they perform valuable services to brokers within the meaning of section 789.8, then they will be entitled to compensation from such brokers.

Inasmuch as the trial court acted with propriety in determining that the statute prohibited the exaction of fees from brokers, it is unnecessary to consider whether Mel Mack is guilty, as charged by the People, of extortion or of unfair competition (§ 3369).

The preliminary injunction is affirmed.