[No. B182088. Second Dist., Div. Three. Mar. 15, 2007.]

SC MANUFACTURED HOMES, INC., et al., Plaintiffs and Respondents, v. CANYON VIEW ESTATES, INC., et al., Defendants and Appellants.

## COUNSEL

Law Office of Anthony C. Rodriguez and Anthony C. Rodriguez for Defendants and Appellants Charles Goldman, the Goldman Family No. III(G) LLC, and Cal-Am Properties, Inc.

Norminton & Wiita, Thomas M. Norminton and Kathleen Dority Fuster for Defendants and Appellants Canyon View Sales, Inc., Mark Seidenglanz, Canyon View Estates, Inc., and Kerry T. Seidenglanz

Sheppard, Mullin, Richter & Hampton, Carlton A. Varner and Anik Banerjee for Defendants and Appellants Continental Mobile Housing, LTD., R&B Communities, Howard C. Brigham and Myron M. Reichert.

Klinedinst PC, John D. Klinedinst and Frederick M. Heiser for Defendants and Appellants Champion Home Builders and Western Homes Corporation.

Propocopio, Cory, Hargreaves & Savitch, Richard A. Heller and Mary V. J. Cataldo for Defendant and Appellant LINC Housing Corporation.

Greenwald, Pauly, Foster & Miller, Andrew S. Pauly and Maryann R. Marzano for Defendant and Appellant Casa Blanca Homes, Inc.

Alston, Alston & Diebold, Elaine B. Alston and Vivienne J. Alston for Defendants and Appellants Polynesian Mobile Home Park LLC, George Kahabka, Emanuel Treitel and Sierra Heights Co., LLC.

Stapke & Harris, Mark R. Stapke and Sandra J. Gamboa for Defendants and Appellants Alexander Keith and Canyon Country Mobile Home Park, LLC.

Michelizzi, Schwabacher, Ward, Bianchi and Thomas J. Ward for Defendants and Appellants Arena Mobile and ˋManufactured Housing Inc., Janice M. Romain and Kent Romain.

Freedman & Taitelman, and Michael A. Taitelman for Defendants and Appellants The Richard B. Francis LLC, Francis Property Management, Inc., Richard B. Francis, Russell Francis, Cordova Associates, LTD., John R. Francis, Charles Hostmyer, Pat Hostmyer and Greenbriar Associates, LTD.

Law Office of William R. Ramsey and William R. Ramsey for Plaintiffs and Respondents.

OPINION

ALDRICH, J.—

## INTRODUCTION

A dealer of mobilehomes alleged it was precluded from selling mobilehomes as a result of a kickback scheme. The dealer sued a number of other mobilehome dealers, as well as a number of mobilehome park managers and owners. After plaintiff dismissed most defendants, the dismissed defendants filed motions for attorney fees and costs pursuant to Civil Code section 798.85, the attorney fees and costs provision of the Mobilehome Residency Law (MRL) (Civ. Code, § 798 et seq.). Section 798.85 permits such awards when the case "aris[es] out of the provisions" of the MRL. We affirm the trial court's order denying attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The parties.*

Plaintiff and respondent SC Manufactured Homes, Inc. (SC Homes), is a retail dealership of mobilehomes in Los Angeles County. Plaintiff and respondent Charles W. Redick, a licensed mobilehome dealer, appears to be the owner of SC Homes. (We refer to SC Homes and Redick collectively as plaintiff.)

Plaintiff sued a large number of mobilehome dealers, mobilehome park managers, and mobilehome park owners. Thirty of these defendants and

appellants appear jointly on appeal (joint defendants).[1] Three named defendants and appellants, collectively referred to as Parklane, are involved with the Parklane Mobile Estates, a 435-space mobilehome park.[2]

### 2. *The complaint.*

After plaintiff filed its initial complaint, the case was referred to the Complex Litigation Project. Thereafter, plaintiff filed its first amended complaint, which is the pertinent complaint. This 123-page complaint consists of 319 paragraphs and 25 attached exhibits. It alleges three causes of action: (1) violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.); (2) intentional interference with prospective economic advantage; and (3) violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.).

The substance of the complaint was that defendants were participants in a conspiracy by which mobilehome dealers paid kickbacks to park owners and operators for the exclusive right and privilege of marketing and selling their mobilehomes in the parks, thereby restraining trade, preventing competition, increasing the cost of the mobilehomes in those parks, and interfering with plaintiff's contracts and potential contracts. Allegedly, the conspiratorial conduct denied plaintiff the ability to sell and lease mobilehomes.

At the beginning of the first amended complaint, plaintiff summarized its allegations as follows: "This action is brought by . . . a mobile home dealer, against the owners and operators of certain mobile home parks located in the City of Santa Clarita, . . . who conspired with certain mobile home dealers . . . to restrain trade and increase profits by refusing to allow buyers of new homes to locate in the park unless they bought particular homes from the [defendant dealers] who provided kickbacks of up to $30,000 to the [defendant park operators] for the exclusive right to place and sell their homes on

---

[1] The joint defendants appear as respondents, jointly through lead counsel. The joint defendants are: Canyon View Estates, Inc., Kerry T. Seidenglanz, Mark Seidenglanz, Canyon View Sales, Inc., Continental Mobile Housing, LTD., R&B Communities, Howard C. Brigham, Myron M. Reichert, Champion Home Builders, Western Homes Corporation, LINC Housing Corporation, Casa Blanca Homes, Inc., Polynesian Mobile Home Park LLC, George Kahabka, Emanuel Treitel, Sierra Heights Co., LLC, Alexander Keith, Canyon Country Mobile Home Park, LLC, Richard B. Francis, The Richard B. Francis LLC, Russell Francis, Francis Property Management, Inc., Cordova Associates, LTD., John R. Francis, Charles Hostmyer, Pat Hostmyer, Greenbriar Associates, LTD., Arena Mobile and Manufactured Housing, Inc., Janice M. Romain, and Kent J. Romain.

[2] Parklane was originally developed by defendant and appellant Charles Goldman and a partner. Defendant and appellant the Goldman Family No. III(G) LLC is the general partner of the partnership that owns the park. Defendant and appellant Cal-Am Properties, Inc., provides management services at the park.

spaces within the park. . . . [¶] 7. [Defendant park operators] also demanded and received economic concessions, fees, or gratuities from [defendant dealers] for the privilege of being allowed to broker used mobile homes in the park. [¶] . . . [¶] 8. These schemes . . . prevent fair competition among mobile home dealers, unduly increase the price of mobile homes, and severely limit the choices of homes available to buyers . . . . [¶] 9. [Plaintiff] is a dealer of new and used mobile homes who refused to pay kickbacks . . . and was . . . damaged in being foreclosed from competing equally in the marketplace of new mobilehomes because the sale of such a home is not possible without the availability of a desirable space upon which to locate the home. It is illegal to charge special 'entry' fees to allow a mobile home owner to obtain a lease to locate his or her home in a park. It is also illegal for a park owner or operator to demand a fee or commission for the sale of a mobile home dealer either directly from the buyer (or seller), or indirectly from the mobile home dealer, unless the fee is disclosed and approved in advance and the park operator performs actual sales services commensurate with the fee. [¶] 10. [Plaintiff] was damaged due to lost mobile home sales through the actions of the [defendant park operators] who conspired with [defendant dealers] to restrain . . . trade."

According to the allegations in the first amended complaint, the conspiracy resulted in "closed parks," i.e., parks that " 'reserve[]' all (or virtually all) of the available spaces in the park to one or more specific dealers for the placement of new model homes until they are sold, leaving none for a potential tenant to lease and place on it a new [mobilehome] purchased from a dealer of his own choice."

Plaintiff further alleged that the conspiratorial acts of connecting the leasing of mobilehome park spaces to the sale of certain mobilehomes was an illegal tying arrangement.[3]

Plaintiff alleged that the illegal acts of defendants, including the tying arrangements and kickbacks, violated one or more provisions of the MRL, including Civil Code sections 798.31, 798.37, 798.72, subdivisions (a) and (b) and 798.74, subdivision (a), and that the payment and nondisclosure of purportedly illegal fees to mobilehome buyers violated Health and Safety

---

[3] To argue that the illegal scheme constituted an illegal tying arrangement, plaintiff subsequently relied upon *Suburban Mobile Homes, Inc. v. AMFAC Communities, Inc.* (1980) 101 Cal.App.3d 532 [161 Cal.Rptr. 811]. On appeal, joint defendants and Parklane argue that the allegations do not allege an illegal tying arrangement and further, that the law has changed since *Suburban* was decided so that now park owners may simultaneously sell mobilehomes and rent spaces. (See discussions in *Illinois Tool Works Inc. v. Independent Ink, Inc.* (2006) 547 U.S. 28 [164 L.Ed.2d 26, 126 S.Ct. 1281]; and *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 334 [7 Cal.Rptr.3d 628].) We need not discuss this dispute because it does not control our disposition.

Code section 18035.3. In part, plaintiff alleged the MRL and the Health and Safety Code were violated because the "kickbacks" were "illegal 'entry, installation, hook-up, and/or landscaping' fees," "illegal 'transfer or selling fees' charged to a homeowner or agent 'as a condition of sale,' " and "illegal fees charged to a homeowner or agent 'upon purchase of a mobile home . . . as a condition for approval of tenancy.' " It was further alleged that when plaintiff refused to pay a kickback, there was a resulting "illegal withholding of approval by [park operators] of a purchaser of a mobilehome that will remain in the park." Allegedly, these and other acts also violated the UCL.

The bulk of the first amended complaint, paragraphs 82 through 286, described particular events, by individual defendants, that purportedly violated the Cartwright Act, and the UCL, and intentionally interfered with plaintiff's prospective economic advantage.

Plaintiff made additional allegations targeting Parklane, including the following: Parklane and its attorney illegally evicted tenants so that mobilehomes of the evicted tenants could be pulled out and replaced with new mobilehomes provided by other coconspirators. Parklane collected a kickback from the sales proceeds. "Parklane acquired the mobilehomes of the evicted tenants through warehouseman's liens that superficially inflated the redemption price to include [the] unreasonable attorney's fee as a lien against the mobile home. [The inflated] redemption price . . . assisted in the illegal eviction." The indirect charges, including the illegal fees and kickbacks, were prohibited by the MRL. Further, Parklane solicited kickbacks from defendants for the exclusive rights to place and develop mobilehomes on 29 new spaces in its existing park. Because plaintiff would not participate in the kickback scheme, it was damaged because it could not place mobilehomes on some of these 29 spaces.[4]

The first cause of action for violation of the Cartwright Act alleged that the kickback conspiracy, including the tying arrangements and lien auction sales, prevented competition and restricted commerce by forcing prospective homeowners to buy new mobilehomes only from those dealers who paid kickbacks. With regard to this cause of action, plaintiff sought more than $10 million for damages it incurred as a result of lost sales, as well as treble damages, emotional distress damages, an injunction prohibiting defendants from restraining trade, and attorney fees and costs.

---

[4] Parklane's attorney was also named as a defendant in the first amended complaint. His anti-SLAPP motion (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) was granted by the trial court. In a related appeal, *SC Manufactured Homes, Inc. v. Trevillyan* (Apr. 26, 2006, B180299) (nonpub. opn.), we reversed.

The second cause of action for intentional interference with prospective economic advantage alleged that because plaintiff would not pay kickbacks, the conspirators intentionally interfered with plaintiff's relationship with home buyers, home sellers, and park operators. For example, it was alleged that when plaintiff had agreements to sell new mobilehomes to prospective tenants, defendant park owners improperly refused the "buyer's application to become a tenant in the park, and thus knowingly disrupted the relationship." Plaintiff allegedly suffered economic harm from the lost sales as a result of the interferences. In addition to general and special damages, plaintiff requested emotional distress damages and punitive damages.

In the third cause of action for violating the UCL, plaintiff alleged the conspiracy enabled defendants to compete unfairly against those who would not participate in the kickback scheme. Further, the complaint alleged that defendant dealers received extra profits through inflated mobilehome prices and recouped illegal kickback charges by secretly increasing the amount homeowners paid for mobilehomes. Plaintiff, who refused to participate in the conspiracy, allegedly lost the opportunity to make profits from the sales of mobilehomes. Plaintiff additionally alleged that the fees Parklane charged dealers to lease spaces were "tantamount to an advance sales commission [and] violates the prohibitions against . . . such entry fees and selling fees as described in [the MRL], including . . . Civil Code § 798.31, § 798.37, § 798.72(a), § 798.72(b), and § 798.74(a)." Plaintiff requested an order enjoining defendants from paying any moneys in order to reserve park spaces, prohibiting the exclusion of certain dealers from certain parks, and prohibiting closed parks. Plaintiff also sought attorney fees for enforcing a public right. (Code Civ. Proc., § 1021.5.)

Each cause of action incorporated all of the preceding allegations in the complaint.

### 3. *Subsequent proceedings.*

One group of defendants involved with Canyon View Estates mobilehome park filed an answer to the original complaint, requesting, among other relief, attorney fees and costs of suit.

The trial court issued a stay prohibiting the other defendants from filing answers to the complaint. Thereafter, the trial court encouraged the parties to articulate the defenses in a master list or in joint status conference statements.

The trial court conducted a number of conferences during which the parties discussed the claims and defenses. In preparation of the September 2004 status conference, the parties filed a joint statement. In this document,

Parklane requested leave to file a demurrer and an anti-SLAPP motion as Parklane contended, in part, that its eviction activities were legal under the MRL.

Four defendants then demurred to the first amended complaint. In addition to other arguments, these defendants raised joinder and argued that the Cartwright Act cause of action failed because the allegations in the complaint were that these defendants "acted unilaterally, and not in concert or combination with any of the other defendants."

In advance of the hearing on the demurrer, the parties appeared at a conference. They discussed joinder and whether the complaint dealt with individual wrongful acts or a "grand overall conspiracy." Defendants were to submit to the court a stipulation regarding threshold issues. The trial court would then make a determination on joinder. Plaintiff was given time to "elect to concede the misjoinder argument and advise that dismissals without prejudice [would] be filed and individual actions [then] filed."

Rather than wait until the trial court addressed joinder, plaintiff dismissed without prejudice a number of defendants, including joint defendants and Parklane.[5]

### 4. *The motions for attorney fees and costs.*

#### a. *The motions.*

After their dismissal, joint defendants and Parklane moved for attorney fees and costs arguing they were entitled to such awards pursuant to Civil Code section 798.85, a section of the MRL. Joint defendants requested approximately $400,000 and Parklane requested approximately $45,000 in attorney fees and costs.

The trial court directed plaintiff to file an opposition addressing whether joint defendants and Parklane had a right to recover attorney fees and costs. The trial court stated that a hearing on the right to recover would be conducted first, and an additional hearing would be held if the court was required to address the amount of the fee requests.

Plaintiff opposed the motions.

#### b. *The trial court's order denying the motions.*

After the hearing on the motions for attorney fees and costs, the trial court issued an order on January 31, 2005, denying the motions. The trial court

---

[5] Plaintiff did not dismiss all persons and entities associated with Parklane or all mobile-home dealers. After the dismissals were entered, plaintiff filed a second amended complaint.

concluded that joint defendants and Parklane were the prevailing parties under Civil Code section 798.85. The trial court noted there was no specific cause of action under the MRL, but that, by itself, was not determinative. The trial court held that while sections of the MRL were mentioned in the complaint and incorporated by reference into all three causes of action, the case did not "arise out of the MRL." Rather, "[o]n the allegations of the [first amended complaint,] at best, Plaintiffs' claims are related to the MRL."

Joint defendants and Parklane appeal from the order denying the motions for attorney fees and costs. We affirm.

## DISCUSSION

### 1. *Introduction.*

Joint defendants and Parklane do not contend they are entitled to attorney fees and costs pursuant to the three stated causes of action, unreasonable restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.),[6] interference with prospective economic advantage,[7] and unfair competition in violation of the UCL.[8] Rather, they argue that they are

---

[6] The Cartwright Act, Business and Professions Code section 16700 et seq., prohibits conspiracies that unreasonably restrain trade. (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court, supra,* 114 Cal.App.4th at p. 334; *Chavez v. Whirlpool Corp.* (2001) 93 Cal.App.4th 363, 369 [113 Cal.Rptr.2d 175].)

[7] An interference with prospective economic advantage cause of action requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. [Citation.]" (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152, fn. 6 [17 Cal.Rptr.3d 289, 95 P.3d 513].) The plaintiff must also "prove that the defendant engaged in an independently wrongful act in disrupting the relationship. [Citation.] In this regard, 'an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' [Citation.]" (*Id.* at p. 1152; see also *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].)

[8] The UCL is designed to preserve fair business competition. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) It prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law, Business and Professions Code section 17500 et seq.]." (Bus. & Prof. Code, § 17200.) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* at p. 180; accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950 [119 Cal.Rptr.2d 296, 45 P.3d 243]; *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 120 [3 Cal.Rptr.3d 429].)

entitled to attorney fees and costs pursuant to Civil Code section 798.85 (hereinafter, Section 798.85), the attorney fees and costs provision of the MRL.

" 'An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the "determination of whether the criteria for an award of attorney fees and costs have been met is a question of law." [Citations.]' [Citation.]" (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397 [23 Cal.Rptr.3d 622], citing among others, *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 669 [17 Cal.Rptr.3d 427]; accord, *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1132–1133 [94 Cal.Rptr.2d 448].)

2. *Joint defendants and Parklane were not entitled to attorney fees and costs pursuant to Section 798.85.*

a. *The MRL and its attorney fees and costs provision.*

"In California, mobilehome tenancies are governed by the Mobilehome Residency Law. (Civ. Code, § 798 et seq.) The law 'extensively regulates the landlord-tenant relationship between mobilehome park owners and residents.' [Citation.] [¶] The protections afforded by the Mobilehome Residency Law reflect legislative recognition of the unique nature of mobilehome tenancies. (See Civ. Code, § 798.55, subd. (a).) Ordinarily, mobilehome park tenants own their homes but rent the spaces they occupy. [Citation.] Once a mobilehome is in place in a park, it is difficult to relocate. [Citations.] Its owner thus 'is more likely to be a long-term resident.' [Citation.] In many cases, mobilehome park tenants have limited and undesirable options if they find 'living in the park no longer desirable, practical, or possible . . . .' [Citation.]" (*People ex rel. Kennedy v. Beaumont Investment, Ltd., supra*, 111 Cal.App.4th at p. 109.)[9] The MRL provides "homeowners a measure of stability and predictability in their mobilehome park residency . . . ." (*Griffith v. County of Santa Cruz* (2000) 79 Cal.App.4th 1318, 1321, 1323 [94 Cal.Rptr.2d 801].)

---

[9] It appears that when tenants are evicted from mobilehome parks, they usually do not take their mobilehomes with them because there are few spaces in other parks, few parks will accept used mobilehomes, and the tenants lack the money to move the mobilehomes. In specified circumstances, park owners or other lienholders, such as lenders, are permitted to sell mobilehomes if a coach is abandoned. (E.g., Civ. Code, §§ 798.56a, subd. (e), 798.61, subd. (f).)

However, the MRL does not control all aspects of a mobilehome park or its residents. For example, the Mobilehomes-Manufactured Housing Act of 1980 (Health & Saf. Code, § 18000 et seq.) regulates a number of items, including sales and escrows of mobilehomes. Another example is the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) which regulates the construction and operation of mobilehome parks and recreational vehicle parks.

■ "The state Mobilehome Residency Law (Civ. Code, § 798 et seq.) regulates relations between the owners and the residents of mobilehome parks." (*Cacho v. Boudreau* (2007) 40 Cal.4th 341, 345 [53 Cal.Rptr.3d 43, 149 P.3d 473], fn. omitted.) Among other definitions, it defines "management," "homeowner," and "residents." (See Civ. Code, § 798.2 [defining "management"];[10] Civ. Code, § 798.9 [defining "homeowner"];[11] Civ. Code, § 798.11 [defining "resident"].[12]) The regulations cover such topics as requiring management to disclose to tenants conditions under which the homeowner will be required to pay gas, water, and electricity service for common areas (Civ. Code, § 798.43), when management may enter homes (Civ. Code, §§ 798.26, 799.2.5), and when management may remove unauthorized vehicles (Civ. Code, § 798.28.5). "The MRL also regulates sales and transfers of mobilehomes in the park, providing specified protections for management, selling homeowners, purchasers and occupants ([Civ. Code, § 798.70] et seq.)." (Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2006) ch. 11, ¶ 11:235, p. 11-68.)

The MRL's attorney fees and costs provision is found in Section 798.85. It reads: "In any action *arising out of the provisions of this chapter* the prevailing party shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party for the purposes of this section if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during trial . . . ." (Italics added.)

■ In addressing the issue before us, we examine the language of Section 798.85 to determine if an award of attorney fees and costs is warranted. (*Salawy v. Ocean Towers Housing Corp., supra*, 121 Cal.App.4th at p. 674 [the language of the statute awarding attorney fees determines whether a specific act will result in an award].)

---

[10] Civil Code section 798.2 provides: " 'Management' means the owner of a mobilehome park or an agent or representative authorized to act on his behalf in connection with matters relating to a tenancy in the park."

[11] Civil Code section 798.9 provides: " 'Homeowner' is a person who has a tenancy in a mobilehome park under a rental agreement."

[12] Civil Code section 798.11 provides: " 'Resident' is a homeowner or other person who lawfully occupies a mobilehome."

 Section 798.85 expressly makes defendants prevailing parties if a case against them is dismissed prior to or during trial. (*Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 949 [105 Cal.Rptr.2d 5].) Therefore, joint defendants and Parklane are the prevailing parties as the litigation has been dismissed in their favor prior to trial.

Thus, the issue becomes: Is this action "arising out of the provisions" of the MRL?

 To be entitled to attorney fees and costs pursuant to Section 798.85, the underlying case must arise in the context of those relationships and claims addressed by the MRL. It is not sufficient that the case "relates to" the MRL.

 For example, in *MHC Financing Limited Partnership Two v. City of Santee, supra*, 125 Cal.App.4th 1372, a mobilehome park owner challenged a local rent control ordinance, in part, by arguing it was preempted by the MRL. (*MHC Financing*, at p. 1379.) The trial court ruled in favor of the park owner concluding several portions of the ordinance were preempted. (*Id.* at p. 1393.) However, the trial court denied the park owner's request for attorney fees. (*Id.* at p. 1376.) On appeal, the park owner argued it was entitled to attorney fees under Section 798.85. The park owner asserted that the term "arising under" in Section 798.85 was a broadly worded phrase that would include those claims that "relate to" the MRL. (*MHC Financing,* at p. 1397.) The appellate court disagreed, stating in part, "The fact that a declaratory relief cause of action *relates to* a particular statute or statutory scheme does not necessarily mean that the cause of action *arises out of* the statute or scheme. For example, in *Patel v. Athow* (1973) 34 Cal.App.3d 727, 731–732 [110 Cal.Rptr. 460], the court decided that the federal courts' statutory exclusive jurisdiction over cases arising under the Economic Stabilization Act of 1970 did not extend to a cause of action seeking a declaratory ruling on the applicability of regulations issued under that act to the parties' lease agreement. . . . [¶] In various contexts, courts have construed the phrases 'arising out of' and 'arising under' more narrowly than the phrase 'relating to.' . . . The Ninth Circuit Court of Appeals held that an arbitration clause covering disputes 'arising under' or 'arising out of' an agreement is narrower in scope than one covering disputes ' "arising out of *or relating to*" ' the agreement. [Citations.] . . . [¶] . . . [T]he phrase 'any action arising out of the provisions of [the MRL]' in Civil Code section 798.85 encompasses only those actions directly involving the application of MRL provisions in specific factual contexts addressed by the MRL, such as actions by mobilehome park residents against management for failing to maintain physical improvements in common facilities in good working order.

[Citations.] Although [the park owner's] declaratory relief claims—that the MRL preempts certain provisions of [the ordinance]—*relate* to the MRL, they do not *arise out of* the MRL because they do not involve application of MRL provisions to a particular factual context addressed by the MRL. . . ." (*MHC Financing Limited Partnership Two v. City of Santee, supra*, at pp. 1397–1398.)

■ A case may "arise" under the MRL even if a complaint does not allege a specific cause of action under the MRL, as long as the dispute is one within the scope of the MRL. While the defendants' defenses may be considered, the foundation of the case must be grounded in the MRL.

Thus, in *Palmer v. Agee* (1978) 87 Cal.App.3d 377 [150 Cal.Rptr. 841], owners of a mobilehome park filed a complaint for unlawful detainer against the defendants, residents of the park. (*Id.* at pp. 380–381.) The trial court granted the defendants' motion for judgment on the pleadings because the park failed to give proper notice. (*Id.* at p. 381.) However, the trial court denied the defendants' motion for attorney fees pursuant to Civil Code former section 789.12, the predecessor to Section 798.85. The trial court reasoned that "the action did not *arise* out of [the MRL notice provision], but arose out of an unlawful detainer action ·. . . ." (*Palmer v. Agee, supra*, at p. 386.) The appellate court held that the trial court erred in refusing to award attorney fees under the MRL because actions include all proceedings required to perfect rights and are not "limited to the complaint or the document initiating the action but the entire judicial proceeding. . . . [¶] An 'action' thus includes all proceedings, at least to the time of judgment, which are required to perfect the rights. The defenses raised in the answer to the complaint are a real part of any action." (87 Cal.App.3d at p. 387.) The tenant's defense to the unlawful detainer proceedings that the landlord had not complied with MRL arose from the MRL.

In *Del Cerro Mobile Estates v. Proffer, supra*, 87 Cal.App.4th 943, a mobilehome park (Del Cerro) rented space to Margery L. Proffer. (*Id.* at p. 945.) Del Cerro's lawsuit against Proffer alleged that her violations of the park's rules and regulations were breaches of contract and constituted a public nuisance under the MRL. (87 Cal.App.4th at p. 945.) After Del Cerro dismissed its lawsuit, Proffer was awarded attorney fees. On appeal, the appellate court concluded Proffer was not entitled to attorney fees on her breach of contract based upon the rental agreement. However, she was entitled to attorney fees incurred in defending the nuisance cause of action because she "had a legal basis to claim recovery of such fees grounded in the [MRL] . . . ." (*Id.* at p. 948.)

*People v. McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731] (*McKale*) is another situation where the plaintiff did not allege a cause of action under the MRL, yet the underlying case discussed a specific factual situation addressed by the MRL.

In *McKale,* a district attorney brought an action advancing the interests of park tenants. The action was filed against a mobilehome park and a bank (Wells Fargo) under the UCL seeking civil penalties and injunctive relief for claimed violations of the MRL and related sections of the Administrative Code. (*McKale, supra,* 25 Cal.3d at p. 631.) The purported violations related to safety and sanitation and ranged from dumping wastewater on the premises to improper burial of underground electrical wiring. (*Id.* at pp. 632, 634.) Other causes of action related to violations of the park's rules and regulations governing tenants. (*Id.* at pp. 634–635 & fn. 2.) *McKale* first held that the Attorney General had standing to bring the lawsuit and the violations of the MRL could be prosecuted as acts of unfair competition. (25 Cal.3d at p. 633.) *McKale* also held that even though the park owner had not tried to enforce the rules and regulations that were themselves unlawful, the existence of those rules and regulations was likely to deceive tenants. Thus, the rules and regulations constituted an unfair business practice, and if properly pled would state a cause of action. (*Id.* at pp. 635–636.) The Supreme Court further found that allegations relating to misleading advertising and discrimination could be stated. (*Id.* at pp. 637–638.)

As to Wells Fargo, the issue was whether it was in "possession and control of the park during any of the alleged discriminatory acts." (*McKale, supra,* 25 Cal.3d at p. 638.) *McKale* held that the Attorney General should have an opportunity to amend its complaint to address this concern. (*Ibid.*) In the second to last paragraph of the opinion, *McKale* addressed Wells Fargo's request for attorney fees and costs as the prevailing party under the MRL. The court stated, "While Wells Fargo appears to be entitled to fees and costs if it is determined to be a prevailing party (see Civ. Code, § 789.12), that determination must eventually depend on whether it prevails on remand." (*McKale, supra,* at p. 639.)

Thus, in *McKale,* the district attorney brought the case on behalf of mobilehome park tenants against two mobilehome landlords and managers— the mobilehome park and Wells Fargo, who might have had possession and control of the park during some of the alleged discriminatory acts.

b. *The case against joint defendants and Parklane did not "arise" under the MRL.*

The MRL regulates the conduct between tenants and landlords—mobilehome homeowners and residents and mobilehome management (owners and owners' agents). (*Cacho v. Boudreau, supra*, 40 Cal.4th at p. 345.) However, the case here does not involve a landlord/tenant dispute. It does not involve a lawsuit brought by a park manager to protect its rights as against its homeowners and residents. It does not involve a lawsuit brought by residents arising from their tenancy. It does not involve a case, such as *McKale*, where an entity with standing brings a lawsuit to protect park residents. Rather, plaintiff is a dealer of mobilehomes; joint defendants and Parklane are dealers of mobilehomes and managers and owners of mobilehome parks. Regardless of how plaintiff framed its complaint, regardless of the titles to the three specified causes of action, and even though plaintiff cited sections of the MRL in articulating the alleged conspiratorial and tortious conduct of the defendants, plaintiff sought to protect its own pocketbook—not the rights of tenants. Plaintiff alleged it was foreclosed from competing in the marketplace of mobilehomes. Even though plaintiff alleged mobilehome tenants were harmed so plaintiff could allege it was enforcing "public rights," the crux of the case was articulated by plaintiff in its summary of the case. Plaintiff alleged *it* "was foreclosed from competing equally in the marketplace" and *it* was damaged "due to lost mobilehome sales." In defending against plaintiff's allegations, joint defendants and Parklane argued they were not involved in a kickback scheme and they did not formulate a plan to exclude plaintiff or any dealer from the marketplace of mobilehomes or from selling mobilehomes in their parks. The case before us does not involve the direct application of MRL provisions in the context for which the MRL was designed.

Parklane is correct when it notes that the allegations against it in the operative complaint dealt with purported wrongful activity that affected park residents and homeowners. These allegations included that Parklane conspired to illegally evict park tenants and unlawfully obtain mobilehomes as pullouts so that new mobilehomes could be sold on those spaces.[13] Parklane is also correct when it states that plaintiff sought to stop these practices by requesting an injunction. But, plaintiff designed these allegations and its relief request to protect itself and not the park tenants. The allegations were always tied to plaintiff's theory of the case that it was denied the ability to sell mobilehomes in Parklane by the purported wrongful activity. The relief

---

[13] Civil Code section 798.58 prohibits the termination of tenancies "for the purpose of making a homeowner's site available for a person who purchased or proposes to purchase, or rents or proposes to rent, a mobilehome from the owner of the park or the owner's agent."

requested was to protect plaintiff's market share and pocketbook, which would incidentally prevent harm to park residents and homeowners. Further, Parklane's defense was that its actions were legal business practices that were not designed to exclude mobilehome dealers, including plaintiff, from its park. Thus, while plaintiff's allegations and Parklane's defenses "relate to" the MRL, they do not "arise" out of the MRL.

Joint defendants and Parklane argue that the case is not just about kickbacks and plaintiff's own personal economic gain, but rather about the purported harm to park residents and homeowners through the alleged de facto entry fees. (Cf. *People v. Mel Mack Co.* (1975) 53 Cal.App.3d 621 [126 Cal.Rptr. 505] [park management charged mobilehome brokers a fee before permitting buyers to move into the mobilehome parks; such fees constitute illegal entry fees under MRL as they increased price paid by prospective tenants].) Joint defendants and Parklane assert that plaintiff is estopped to argue otherwise as plaintiff argued in the trial court that the case was about illegal fees imposed upon park tenants as a result of the kickbacks and illegal evictions. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41] [discussing judicial estoppel].) However, plaintiff's argument did not alter the foundation of the case as framed by plaintiff, namely, that the illegal conspiracy and acts denied it the ability to sell mobilehomes. Plaintiff requested damages to cover for *its* losses. The injunctions plaintiff requested were to protect *its* pocketbook. Plaintiff was not trying, like the Attorney General in *McKale*, to protect mobilehome tenants. Plaintiff linked its case to the MRL to support its articulated causes of action by identifying specific statutory violations. These allegations did not, however, alter the gravamen of plaintiff's case.

Joint defendants and Parklane point to *Palmer v. Agee, supra*, 87 Cal.App.3d 377 and *Del Cerro Mobile Estates v. Proffer, supra*, 87 Cal.App.4th 943, to argue that they were entitled to their attorney fees and costs pursuant to Section 798.85 because they raised the MRL in defense. However, unlike the present case, *Palmer* and *Del Cerro* involved classic landlord/tenant disputes. *Palmer* was an unlawful detainer action and *Del Cerro* involved issues relating to whether a tenant's breaches of the park's rules and regulations constituted a nuisance.

Joint defendants and Parklane contend that the MRL is not limited to the regulation of park residents, park owners, and park management. To support this argument, joint defendants and Parklane point to a number of provisions in the MRL mentioning other entities or persons, including caretakers and

real estate brokers. However, the inclusion of other persons and entities in the statutory scheme is consistent with its purpose, of regulating the landlord/tenant relationship in mobilehome parks. These statutes do not expand the scope of the MRL to the degree suggested by joint defendants and Parklane. (E.g., Civ. Code, §§ 798.80, subd. (d) [real estate broker may collect commission pursuant to contract between broker and mobilehome park owner], 798.34 [homeowner may have guests and caretakers, and homeowner may share home], 798.75 [escrow for mobilehome that is to remain in the park upon sale must contain executed rental agreement or statement by park's management agreeing to terms of tenancy].) Additionally, the case before us does not address a situation involving these specific regulations. Thus, as examples, we are not addressing situations involving a broker trying to collect commissions, a homeowner trying to enforce his or her right to have a caretaker, or a park owner trying to recoup losses from an escrow company that has not obtained a rental agreement when a mobile-home that is to remain in the park is sold.

Lastly, we find unpersuasive the statutory construction argument presented by joint defendants and Parklane. The argument is as follows: (1) Section 798.85 refers to "the prevailing party." It does not limit "prevailing party" to tenants or park owners or managers. (2) In comparison, the next section of the MRL, section 798.86 of the Civil Code, permits "a homeowner" or "former homeowner" who is successful in enforcing his or her rights to collect punitive damages and additional damages for willful violations by park managers.[14] And, (3) had the Legislature wanted to limit who could collect attorney fees under Section 798.85, it would have been specific, as it was when it drafted Civil Code section 798.86. However, Section 798.85 is a reciprocal attorney fees and costs provision permitting both sides to a dispute arising under the MRL to obtain attorney fees and costs. In contrast, Civil Code section 798.86 is a unilateral attorney fees and costs provision, permit-ting attorney fees and costs awards to homeowners and former owners only, and not park managers.

Joint defendants and Parklane are not entitled to attorney fees and costs under Section 798.85 because this case did not arise out of the MRL and did not involve the application of MRL provisions in specific factual contexts addressed by the MRL.

---

[14] *Patarak v. Williams* (2001) 91 Cal.App.4th 826 [111 Cal.Rptr.2d 381] construed "willful" in Civil Code section 798.86.

## DISPOSITION

The order is affirmed. Joint defendants and Parklane are to bear all costs on appeal.

Klein, P. J., and Kitching, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 20, 2007, S152082.