Filed 1/15/21  City of San Diego v. Nelson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CITY OF SAN DIEGO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALICE HOWARD NELSON et al.,<br><br>    Defendants and Appellants. | D073207<br><br><br><br>(Super. Ct. No. 37-2016-00039245-CU-PT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa C. Schall and Richard S. Whitney, Judges.  Affirmed.

Alice Howard Nelson, in pro. per., for Defendant and Appellant.

Andrew Nelson, in pro. per., for Defendant and Appellant.

Gordon Rees Scully Mansukhani, Timothy K. Branson, and David A. Chasin for Plaintiff and Respondent.

Alice Howard Nelson (also known as Alice Howard) and Andrew Nelson appeal from a judgment of abandonment of their mobilehome, which was situated on property owned by the City of San Diego (City) at the former De Anza Cove Mobilehome Park (Park).  The judgment of abandonment authorized the City to dispose of the mobilehome and awarded damages in

the City's favor.  (Civ. Code, § 798.61.)[1]  Appellants contend the trial court erred when it determined the mobilehome was abandoned, failed to comply with a bankruptcy stay, and improperly refused to continue a hearing at which Alice failed to appear.  Appellants also challenge the manner of service of the City's notices and petition.  Appellants have not demonstrated they are entitled to relief.  We affirm the judgment.

## FACTS

The City of San Diego owned the property on which the former De Anza Cove Mobilehome Park was located.  Appellants resided in a mobilehome stationed at the Park.  Appellants owned the mobilehome and paid rent to the City for a spot at the Park.  The mobilehome sat atop a concrete slab; it was not attached to the land.

In 2010, the City obtained a judgment against Alice in an unlawful detainer action.  In addition to a judgment of possession, the judgment included an award of damages totaling $95,981.55.  In August 2012, while an appeal of the unlawful detainer judgment was pending, Alice informed the Park property manager she had vacated her unit.  The unlawful detainer judgment became final in November 2014.  After resolution of various lawsuits involving the property, the City closed the Park to the majority of its former residents in January 2016, and to all remaining residents in October 2016.  After closing the Park, the City fenced it off to prevent anyone from entering without permission.  The City did this "to protect the property and the City."

---

[1]     Unless otherwise specified, statutory references are to the Civil Code.

2

In August 2016, attorneys for the City posted a "Notice of Belief of Abandoned Mobilehome" on Alice's mobilehome at the Park.[2] The Notice stated in part:

> "The rent on this property was due and unpaid from April 2010 until August 2012, at which point you informed Landlord that you had vacated the property; it is apparent to management that the mobilehome and the real property have been unoccupied for at least 60 consecutive days; and the mobilehome and the real property are believed to be abandoned. The mobilehome will be deemed abandoned within the meaning of Section 798.61 of the California Civil Code, unless the [designated attorney] receives at the address indicated above a written notice from you stating both of the following on or before September 9, 2016:
>
> "(1) Your intent not to abandon the mobilehome; and
>
> "(2) Your tender of the full amount owning for past-due rent and utilities."

In addition to posting a copy of the Notice at the mobilehome, counsel also sent copies of the Notice via certified mail to multiple off-premises addresses he had located through research and e-mailed copies to her attorney in the unlawful detainer action and prior class counsel.

In a letter to the designated attorney, Alice wrote, "It has just come to my attention that your law firm . . . is possibly pursuing a lawsuit against me

---

[2] In the Notice, the attorneys stated they represented "Mission Bay Harbor Community ('Landlord'), the successor Landlord pursuant to the Rental Agreement and Park Rules and Regulations ('Rental Agreement') under which Alice M. Howard-Nelson ('Former Resident') has abandoned the mobilehome on the premises located at . . . De Anza Road . . . ." Neither the parties nor the record explained the relation between Mission Bay Harbor Community and the City. The attorneys that issued the Notice on behalf of Mission Bay Harbor Community represent the City in the present petition.

3

and my mobilehome . . . ; a home that me and my children were illegally and wrongfully evicted from by you and the City of San Diego." (*Sic.*) Alice informed the City she intended to seek legal advice and provided a post office box address for future correspondence.

The City sent a letter to the address provided by Alice offering to waive its monetary claims against her in exchange for her either removing the mobilehome or permitting the City to remove the mobilehome. Alice responded via e-mail, stating, "We just received your letter and are seeking legal counsel and advice. [¶] Please clarify all of the statements that you made in your letter addressed to us."

By now, the City's attorney was also in contact with the attorney who had represented Alice in the unlawful detainer action. The City sent a proposed agreement memorializing the City's offer to waive its monetary claims against Alice in exchange for removal of the mobilehome; however, Alice failed to respond.

In November 2016, the City petitioned for a judicial declaration of abandonment pursuant to section 798.61. The petition stated that Park management would dispose of the abandoned mobilehome and not seek a tax clearance certificate, management did not intend to sell the mobilehome's contents before its disposal, and management intended to file a notice of disposal with the Department of Housing and Community Development and complete the disposal process consistent with the statutory requirements. In addition to serving the parties, the City sent a copy of the petition to the county tax collector, stating, "Please be advised that the City of San Diego

4

intends to dispose of the abandoned unit." The petition also sought damages for past due rent.[3]

Originally, the petition named only Alice as a respondent. In December 2016, Alice's son Andrew was added to the title of the mobilehome as a registered owner. Although it is unclear from the incomplete record, the City reports that Andrew was added as a respondent after he voluntarily appeared in the action, based on his assertion of an ownership interest in the mobilehome.

Andrew filed a general denial in response to the petition stating he was a co-owner of the mobilehome, he denied all asserted claims, and he had not been served. Alice also generally denied all claims asserted by the City. She claimed the mobilehome was not abandoned, but rather the City prevented her from going to it, and further claimed she had not been properly served. She filed an additional declaration stating she had attempted to obtain copies of documents from counsel's downtown office; however, the employees there "refused to serve [her] with the papers that [she] never received" and refused to accept her "legal papers." She again claimed the City prevented her from entering the Park and "blocked [her]" from her home.

The City filed a prehearing brief attaching declarations and evidence in support of its petition. A declaration from the Park's property manager explained the mobilehome was located on property formerly known as the De Anza Cove Mobilehome Park, the unit was not permanently attached to the land, Alice had informed management she had vacated her unit in August

---

[3] Proofs of service of the petition do not appear in the record; however, the City represented it made proper service and the trial court noted that Appellants had been properly served.

2012, and Appellants failed to pay rent after March 2010.[4] The City claimed it was entitled to damages for unpaid rent accruing from the posting of the abandonment notice in August 2016 through the date of hearing on the petition at a rate of $548.52 per month, Alice's prior monthly rent.

The property manager's declaration further stated:

> "The unit is vacant and has been so for several years. Further, with the exception of [Alice] attempting to come onto the property a few times in late 2016, there has been no activity in the unit that I or any of my staff have observed. . . . Based on the fact that the City obtained a judgment for possession against [Alice] in 2011, that she informed us that she was vacating the unit in August 2012, that her appeals have been dismissed, that the unit has remained vacant and unused for several years, and that [Alice] has not taken steps to remove the unit, I believe, as most reasonable people would, that [Alice] has abandoned the unit. Although I understand [Alice] contests the City in this abandonment proceeding and asserts she has not abandoned the unit, it does not make sense that she claims to maintain an interest in the unit but will not take steps to remove the mobilehome from the Park despite the Park closure."

There is no record of any prehearing brief submitted by Appellants.

The matter was originally set to be heard in April 2017. However, on the day of the hearing, Appellants filed a request to stay proceedings based on pending bankruptcy proceedings, and proceedings were stayed. After the bankruptcy stay was lifted as to Andrew, an order finding abandonment was entered against Andrew only, after a hearing in November 2017. An order was entered against Alice after her bankruptcy stay was lifted in May 2018. The hearing proceeded in Alice's absence after the court denied a request for

---

4      Apparently, one additional rent payment was made in December 2011.

6

a continuance. Andrew and Alice's daughter attempted to appear on Alice's behalf, with a doctor's note purporting to excuse her absence. The City's counsel observed that the proceedings had been particularly protracted due to the bankruptcy stay and prior requests for continuances attributable to health conditions. Additionally, Alice had previously been admonished that any future requests for a continuance must be timely filed, with supporting medical documentation.[5]

The trial court entered a final, written order granting the City's petition in June 2018. In the order, the court found the City had made an adequate showing under section 798.61 that the mobilehome had been abandoned and awarded the City damages of $11,518.92, representing unpaid rent accruing after the City served its notice of belief of abandonment. Shortly thereafter, the trial court entered a judgment of abandonment, authorizing the City to dispose of the mobilehome pursuant to the statute. (§ 798.61, subd. (f).) We exercised our discretion to treat prematurely filed notices of appeal as being taken from the appealable judgment.

## DISCUSSION

### I.

### *Applicable Law*

"The state Mobilehome Residency Law (Civ. Code, § 798 et seq.) regulates relations between the owners and residents of mobilehome parks." (*Cacho v. Boudreau* (2007) 40 Cal.4th 341, 345, fn. omitted.) Among other things, the Mobilehome Residency Law sets forth the procedure mobilehome

---

[5] After granting Alice's prior procedurally defective request for a continuance, the court had previously admonished Alice that "any future ex parte requests would need to be filed timely with a medical confirmation document."

7

park management must follow to dispose of an "abandoned mobilehome." (§ 798.61.) Under the law, a mobilehome is considered abandoned if (A) it "is located in a mobilehome park on a site for which no rent has been paid to the management for the preceding 60 days," (B) it "is unoccupied," (C) "[a] reasonable person would believe it to be abandoned," and (D) it "is not permanently affixed to the land." (*Id.*, subd. (a)(1)(A)-(D).) An abandoned mobilehome includes one "that is uninhabitable because of its total or partial destruction that cannot be rehabilitated, if the mobilehome also satisfies the [four prior requirements]." (*Id.*, subd. (a)(2)(B).) "After determining a mobilehome in a mobilehome park to be an abandoned mobilehome, the management shall post a notice of belief of abandonment on the mobilehome for not less than 30 days, and shall deposit copies of the notice in the United States mail . . . ." (*Id.*, subd. (b).) Thirty or more days thereafter, "management may file a petition in the superior court in the county in which the mobilehome park is located, for a judicial declaration of abandonment of the mobilehome." (*Id.*, subd. (c)(1).) In the petition, management must "[d]eclare . . . that the management will dispose of the abandoned mobilehome, and therefore will not seek a tax clearance certificate . . . ," "[d]eclare . . . whether the management intends to sell the contents of the abandoned mobilehome before its disposal," and "[d]eclare . . . that management intends to file a notice of disposal with the Department of Housing and Community Development and complete the disposal process consistent with the requirements of [section 798.61] subdivision (f)." (*Id.*, subd. (c)(2)(A), (B), & (D).) Management must also "[n]otify the county tax collector . . . of the declaration that management will dispose of the abandoned mobilehome by sending a copy of the petition by first class mail." (*Id.*, subd. (c)(2)(C).)

At the hearing on the petition, the petitioner must "show[] by a preponderance of the evidence that the criteria for an abandoned mobilehome has been satisfied . . . ." (§ 798.61, subd. (d)(2).) If the petitioner does so, "and no party establishes an interest [in the mobilehome] . . . and tenders all past due rent and other charges, the court shall enter a judgment of abandonment, determine the amount of charges to which the petitioner is entitled, and award attorney's fees and costs to the petitioner." (*Ibid*.)

The statute prescribes the procedures management must undertake, having obtained a judgment of abandonment, to sell or dispose of the abandoned mobilehome. (§ 798.61, subds. (e), (f).) At any time prior to the sale or disposal of the abandoned mobilehome, "any person having a right to possession of the abandoned mobilehome may recover and remove it from the premises upon payment to the management of all rent or other charges due, including reasonable costs of storage and other costs awarded by the court." (*Id*., subds. (e)(1)(C), (f)(1)(D).)

## II.

### *Standard of Review*

There are no published cases specifying the standard of review applicable to a judgment of abandonment under Civil Code section 798.61. Appellants do not address the applicable standard of review in their briefing. The City contends the judgment should be reviewed under the same abuse of discretion standard applicable to a trial court's decision in an action for declaratory relief. (See *Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 364 [court's decision to grant or deny declaratory relief will not be disturbed on appeal absent a clear abuse of discretion].) However, the trial court's authority to grant declaratory relief is inherently discretionary. (Code Civ. Proc., §§ 1060,

9

1061; see *Osseous Technologies*, at p. 364.) The abandonment statute is not inherently discretionary; it sets forth the criteria for an abandoned mobilehome and the procedure a petitioner must undertake to obtain a judgment, which is required prior to disposal or sale of the abandoned property. (See Civ. Code, § 798.61, subds. (b)-(d).) If the petitioner establishes by a preponderance of the evidence the criteria have been satisfied, and no party establishes an interest in the mobilehome and tenders all past due rent and other charges, "the court *shall* enter a judgment of abandonment . . . ." (*Id.*, subd. (d)(2), italics added.)

In light of the statutory language, we find the appropriate standard of review is a mixed one. (See, e.g., *Robinson v. City of Yucaipa* (1994) 28 Cal.App.4th 1506, 1514, 1516-1517 [noting that interpretation of a statute is a question of law, while fact questions are reviewed for substantial evidence, and concluding Mobilehome Residency Law does not preempt local rent control ordinance].) We defer to the facts, as found by the trial court, if they are supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [trial court's resolution of disputed factual issues must be affirmed so long as supported by substantial evidence].) We review the entire record to determine whether the evidence was sufficient, resolving all evidentiary conflicts and indulging all reasonable inferences in support of the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 577; *Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308.) If there is substantial evidence in support of the trial court's factual determinations, "it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874, italics omitted.)

10

Whether the historical facts (i.e., those found by the trial court, if supported by substantial evidence) justify issuance of the judgment of abandonment under the applicable statutes is a question of law we review de novo. (See *People v. Cromer* (2001) 24 Cal.4th 889, 893-896, 900-903 [discussing standards of appellate review and concluding that appellate courts should independently review a trial court's determination that the prosecution's failed efforts to locate an absent witness are sufficient to justify an exception to the defendant's constitutionally guaranteed right of confrontation at trial]; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800-801 [observing traditional notion that questions of fact are reviewed by giving deference to the trial court's decision, while questions of law are reviewed under a nondeferential standard, affording plenary review, and concluding the court should independently determine whether the trial court was correct in finding a settlement note to be usurious]; cf., *People v. Ault* (2004) 33 Cal.4th 1250, 1272 [concluding appellate courts should apply abuse of discretion standard of review to trial court's grant of new trial on ground of prejudicial juror misconduct].) Regardless of whether we apply a de novo, substantial evidence, or abuse of discretion standard of review, we conclude Appellants have not demonstrated they are entitled to relief.

III.

*Appellants Have Not Demonstrated Error*

The record establishes the City's petition met the statutory requirements for a judicial declaration of abandonment. A notice of belief of abandonment was properly posted on the mobilehome and served via mail. (§ 798.61, subd. (b).) The petition was filed in the appropriate venue (San Diego County, where the mobilehome was located) (*id.*, subd. (c)(1)), and contained the required declarations that management would dispose of the

11

abandoned mobilehome and not seek a tax clearance certificate, management did not intend to sell the mobilehome's contents before its disposal, and management intended to file a notice of disposal with the Department of Housing and Community Development and complete the disposal process consistent with the statutory requirements. (*Id.*, subd. (c)(2)(A), (B), & (D).) The City notified the county tax collector of its intentions by providing a copy of the petition. (*Id.*, subd. (c)(2)(C).)

The record further establishes the trial court's determination that the mobilehome was "abandoned" is supported by substantial evidence, much of which was uncontested. The Park property manager's declaration established that the mobilehome was located on property formerly known as the De Anza Cove Mobilehome Park, the mobilehome was not permanently affixed to the land, Appellants ceased paying rent in March 2010—far longer than 60 days before the petition was filed, Appellants vacated the mobilehome in 2012, and the mobilehome was therefore "unoccupied."[6] (§ 798.61, subd. (a)(1)(A), (B), (D).) Moreover, the conclusion that a reasonable person would believe the mobilehome to be abandoned (*id.*,

---

[6] At a hearing, Andrew stated he paid rent through August 2012; even if this is accurate, the petition was still filed in compliance with the statutory requirement. (§ 798.61, subd. (a)(1)(A).) Alice also claimed in a declaration that "[t]he fees are paid up on my home," and that the City owed them money, asserting that this was going "[t]o be explained in detail, shortly," but Appellants submitted no evidence to support these assertions. Similarly, on appeal, Appellants asserted in their opening briefs that they paid all of the rent that was demanded at some unspecified time, but they provided no citation to the record or evidence to support these assertions. In their reply brief, Appellants changed their argument, and instead asserted that they "tried to pay rent" to the City. They again failed to include a citation to the record to support this claim. We reject all of these unsupported contentions. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.)

12

subd. (a)(1)(C)) is amply supported by the facts that Appellants had failed to pay rent or occupy the mobilehome for years, the Park had permanently closed in 2016, and Appellants had failed to remove the mobilehome even when the City offered to waive damages.

The City thus demonstrated the criteria necessary to establish the mobilehome was abandoned under the law. As noted (see fn. 6, *ante*), there is no evidence that Alice or Andrew even attempted to tender past due rent and other charges for the relevant time period to preclude entry of judgment. (§ 798.61, subd. (d)(2).) The trial court properly entered judgment of abandonment. (*Ibid*.)

Appellants' arguments on appeal do not compel a different conclusion. Appellants contest the manner of service, stating "they served us at our home at De Anza for this case but we don't live there so how could they serve us?" The applicable statute requires posting both the notice and the petition at the mobilehome, as well as service by mail to the parties' last known addresses. (Civ. Code, § 798.61, subds. (b), (c)(1).) Although the record is incomplete, it establishes that the City complied with these requirements.[7] The record further establishes that Appellants appeared and answered. " 'A general appearance by a party is equivalent to personal service of summons on such party.' [Citations.] Thus, the Courts of Appeal have explained: ' "A general appearance operates as a consent to jurisdiction of the person, dispensing

---

[7]     As previously noted, proofs of service of the petitions fail to appear in the appellate record. The City represents they were properly filed in the lower court, and the trial court noted that Appellants had been properly served. " '[An appellant] has the burden of providing an adequate record. [Citation]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

13

with the requirement of service of process, and curing defects in service." ' "
(*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52; Code Civ. Proc.,
§ 410.50 ["A general appearance by a party is equivalent to personal service
of summons on such party."].)

Appellants also claim the case against Alice "was supposed to be put on
hold due to a [bankruptcy] filing," but was not. They claim the City was
aware of an active bankruptcy case when the court entered its ruling. The
record, however, does not support these claims. Rather, the record
establishes that an order was entered only against Andrew—not Alice—when
Alice's case was stayed due to a pending bankruptcy, and the case against
Alice proceeded only when the bankruptcy stay applicable to her had been
lifted. Appellants have not established that the case proceeded in violation of
a bankruptcy stay.

Appellants contend the court improperly "refused" Alice's doctor's note
which purportedly "[told] [her] not to appear due to [her] health," and
proceeded to enter an order finding abandonment in Alice's absence. "[T]he
trial court has a wide discretion in granting or denying continuances," and its
"decision will not be disturbed on appeal unless a clear abuse of discretion is
shown." (*Muller v. Tanner* (1969) 2 Cal.App.3d 445, 457 [no abuse of
discretion in denying request to continue motion hearing].) Appellants bear
the burden of showing that the court abused its discretion in denying the
request for a continuance. (*Mahoney v. Southland Mental Health Associates
Medical Group* (1990) 223 Cal.App.3d 167, 170.) The trial court did not abuse
its discretion here. The proceedings had already been unduly protracted due
to bankruptcy stays and prior requests for continuances allegedly
attributable to health conditions, and the trial court reasonably concluded an
additional continuance was not warranted under the circumstances. Alice

14

did not file a noticed motion, supporting declaration, or ex parte application to continue the May 2018 hearing, despite having been previously admonished to do so by the trial court.  Instead, she merely sent her daughter with a purported doctor's note on the same date as the scheduled hearing.  Although the trial court has the *discretion* to grant a continuance based on the illness of a party, the court "may take into consideration the legal sufficiency of the showing in support of the [request for continuance] and the good faith of the moving party."  (*Kalmus v. Kalmus* (1951) 103 Cal.App.2d 405, 414, disapproved on other grounds in *Hudson v. Hudson* (1959) 52 Cal.2d 735, 739.)  "Illness of a party does not *ipso facto* require the granting" of a continuance request, and we do not disturb the trial court's ruling absent a plain abuse of discretion which is not present here.  (*Ibid*.; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 [trial court did not abuse its discretion in denying party's request for continuance of contempt hearing where court impliedly found the request was a delaying tactic].)

Finally, Appellants raise a host of other arguments which are unsupported by the record, irrelevant to the judgment of abandonment, and in many cases indecipherable.  For example, Appellants contend the reporter's transcript from one hearing inaccurately failed to include an exchange between Andrew and the court in which Andrew informed the court that Alice could not afford an attorney, but that exchange is reflected in the reporter's transcript.  Appellants claim a different judge "acted drunk in court" and the City's attorney "repeatedly lie[d] in court to get what he want[ed]," but they point to no specific incidents or evidence to support these allegations.  Appellants contest the prior unlawful detainer action against them and class actions involving the Park and reference various criminal

15

cases purportedly involving their former Park neighbors—none of which is relevant. And Appellants make conclusory and unclear claims such as "The Ellis Act" (followed by no argument or explanation); "Conflicts of interest from many, many sources" (again with no reasoned argument or explanation); and statements such as the following, "There have been multiple attempts on our lives and multiple threats on our lives. We have been threatened, hurt, followed and filmed by Neo-Nazis, Gordon and Rees Attorneys, white racists, etc. There is more to tell." (Some capitalization omitted.) In their reply brief, Appellants rhetorically ask if they were evicted "[b]ecause [they] know too much[,] [s]aw too much[,] [t]old too much[.]" (Capitalization and bolding omitted.) They request that one of the City's attorneys submit to a "lie detector test" and questioning by this court, and they conclude their argument section with the statement "More to come." In all instances, Appellants fail to explain how these allegations demonstrate the trial court erred in issuing the judgment that is the subject of this appeal. Appellants have not demonstrated they are entitled to relief.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


GUERRERO, J.

WE CONCUR:



BENKE, Acting, P. J.



IRION, J.

17